UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HUGHE JEAN-CHARLES, and AUDREY
JEAN-CHARLES on behalf of themselves and on behalf
of their infant children, RJC and DJC,

        Plaintiffs,

v.

THE CITY OF NEW YORK, et al.,

        Defendants.

Index No. 21-CV-03803-DG-RML

## DEFENDANTS SUCCESS ACADEMY AND VAILARIE EUBANKS'S MOTION TO DISMISS THE CITY DEFENDANTS' CROSS-CLAIM

Date: April 21, 2025

Georgia K. Winston
Hannah Belitz
**WALDEN MACHT HARAN & WILLIAMS LLP**
250 Vesey Street, 27th Floor
New York, NY 10281
Tel: (212) 335-2030
gwinston@wmhwlaw.com

*Attorneys for Success Academy Charter Schools, Inc., Success Academy Charter Schools – NYC, and Vailarie Eubanks*

# TABLE OF CONTENTS

**Pages**

PRELIMINARY STATEMENT ..................................................................................................1

RELEVANT ALLEGATIONS IN THE COMPLAINT ................................................................1

RELEVANT ALLEGATIONS IN THE CROSS-CLAIM ............................................................4

PROCEDURAL HISTORY ..........................................................................................................4

STANDARD OF REVIEW ..........................................................................................................5

ARGUMENT ................................................................................................................................6

I.        The City Defendants Allege *No* Facts ...............................................................................6

II.      Neither Contribution Nor Indemnification is Available Here .............................................7

          A.      Contribution Is Unavailable Because Plaintiffs' Claims Against the City Defendants Do not Sound in Tort ......................................................................8

          B.      Indemnification Is Unavailable ...............................................................................8

III.     Any Liability Imposed By Plaintiffs Upon the City Defendants Arises from the City Defendants' Own Conduct ........................................................................................10

CONCLUSION ...........................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*17 Vista Fee Assoc. v. Tchrs Ins. and Annuity Ass'n of Am.*,
   259 A.D.2d 75 (1st Dep't 1999) .................................................................................. 9

*Ainette v. Mkt. Basket Inc.*,
   2021 WL 1022590 (S.D.N.Y. Mar. 16, 2021) ................................................................ 9

*Am. Home Assurance Co. v. Senaduana Freight Forwarders, Inc.*,
   2009 WL 10698434 (S.D. Fla. Feb. 8, 2009) ................................................................. 7

*Am. Med. Distributors v. Macdonald Tuskey*,
   2018 WL 1478301 (S.D.N.Y. Mar. 23, 2018) ................................................................ 5

*Amguard Ins. Co. v. Getty Realty Corp.*,
   147 F. Supp. 3d 212 (S.D.N.Y. 2015) ............................................................................ 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ....................................................................................................... 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ....................................................................................................... 5

*Cubilete v. United States*,
   469 F. Supp. 3d 13 (E.D.N.Y. 2020) .............................................................................. 6

*Energy Brands, Inc. v. Jorgensen*,
   2011 WL 282354 (W.D.N.Y. Jan. 25, 2011) ................................................................. 7

*Fair Housing Justice Center, Inc. v. 203 Jay St. Associates, LLC*,
   2024 WL 3934518 (E.D.N.Y. Aug. 26, 2024) ............................................................... 8

*Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*,
   2006 WL 2802092 (E.D.N.Y. Sept. 28, 2006) ........................................................... 5, 6

*Gabriel Cap., L.P. v. Natwest Fin., Inc.*,
   137 F. Supp. 2d 251 (S.D.N.Y. 2000) ............................................................................ 7

*Gallop v. Cheney*,
   642 F.3d 364 (2d Cir. 2011) ........................................................................................... 5

*Goodman v. Port Auth. of New York & New Jersey*,
   850 F. Supp. 2d 363 (S.D.N.Y. 2012) ............................................................................ 8

*Haraden Motorcar Corp. v. Bonarrigo*,
   2021 WL 4906989 (N.D.N.Y. Oct. 21, 2021) ................................................................ 9

*In re Lowbet Realty Corp.*,
	43 Misc. 3d 587 (Sup. Ct. N.Y. Cnty. 2014) ................................................................... 8

*Isaacs v. City of New York*,
	2019 WL 1208787 (E.D.N.Y. Mar. 13, 2019) ............................................................ 5, 7

*J.C. v. Mark Country Day Sch.*,
	2007 WL 201163 (E.D.N.Y. Jan. 23, 2007) ................................................................. 10

*L.B. v. City of New York*,
	2025 WL 788662 (E.D.N.Y. Mar. 12, 2025) ........................................................... 10, 11

*Landtek Grp., Inc. v. N. Am. Specialty Flooring, Inc.*,
	2016 WL 11264722 (E.D.N.Y. Aug. 12, 2016), *report and recommendation adopted*, 2016 WL 8671839 (E.D.N.Y. Sept. 16, 2016) ........................................... 8

*Monaghan v. SZS 33 Assocs., L.P.*,
	73 F.3d 1276 (2d Cir. 1996) ........................................................................................... 9

*Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*,
	156 F. Supp. 3d 348 (E.D.N.Y. 2016) ............................................................................ 6

*Stollman v. Williams*,
	2023 WL 6294156 (S.D.N.Y. Sept. 27, 2023) ............................................................. 10

*U.S. Bank, Nat. Ass'n v. Commonwealth Land Title Ins. Co.*,
	2015 WL 1291151 (S.D.N.Y. Mar. 23, 2015) ................................................................ 9

*U.S. ex rel. Ryan v. Staten Island Univ. Hosp.*,
	2011 WL 1841795 (E.D.N.Y. May 13, 2011) ................................................................ 8

## **Statutes**

N.Y. Soc. Serv. Law § 412 ........................................................................................... 11

N.Y. Soc. Serv. Law § 413 ........................................................................................... 10

N.Y. Soc. Serv. Law § 424 ..................................................................................... 10, 11

N.Y. Soc. Serv. Law § 419 ........................................................................................... 10

## **Rules**

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 1

N.Y. Comp. Codes R. & Regs. tit. 18, § 432.2 ............................................................ 11

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants Success Academy Charter Schools, Inc., Success Academy Charter Schools – NYC (together, "Success Academy"), and Vailarie Eubanks ("Eubanks," and together with Success Academy, the "Success Defendants") move to dismiss the cross-claim of Defendants the City of New York (the "City") and Adrian Gonzales ("Gonzales," and together with the City, the "City Defendants").

## PRELIMINARY STATEMENT

The vast majority of Plaintiffs' claims concern the conduct of the City Defendants alone. When Plaintiff RJC came to school with a swollen lip and said that his father, Hughe Jean-Charles, did it, Ms. Eubanks reported it to City authorities, as she was required to do under the law. The City Defendants then initiated an investigation and ultimately brought charges against Hughe Jean-Charles for alleged child abuse. All but one of Plaintiffs' claims—for alleged discrimination against RJC based on his perceived disability, which is brought against only the Success Defendants—center on the actions of the City Defendants. Yet astonishingly, the City Defendants, in their answer to Plaintiffs' third amended complaint ("TAC"), have asserted a cross-claim against the Success Defendants. Their cross-claim alleges only that "[a]ny damages sustained by Plaintiffs were caused in whole or in part by the acts or omission[s] of [the Success Defendants]." *See* Dkt. No. 77 at ¶ 199. The City Defendants allege no facts in support of this allegation and it fails to state a viable claim as a matter of law. Their cross-claim must therefore be dismissed.

## RELEVANT ALLEGATIONS IN THE COMPLAINT

The relevant factual allegations in support of Plaintiffs' claims consist of the following:

Beginning in kindergarten in 2014, RJC was a student at Success Academy Bergen Beach. TAC ¶¶ 15, 30. In January 2017, Success Academy informed Plaintiffs that they believed RJC had a learning disability. *Id.* ¶¶ 26. Success Academy requested to have RJC evaluated, but Plaintiffs refused. *Id.* ¶¶ 26-27. Success Academy then "began a sustained campaign to harass the family to

1

push RJC out of school." *Id.* ¶ 28. Ms. Eubanks and others called Mrs. Jean-Charles regularly about RJC's behavioral issues. *Id.* ¶ 29. Prior to 2017, it was uncommon for Mrs. Jean-Charles to receive such reports. *Id.* ¶ 30. Plaintiffs claim "it became clear that" the purpose of these calls "was to convince Mrs. Jean-Charles to withdraw RJC." *Id.* ¶ 31. Plaintiffs allege that Success Academy "has an established policy and practice" of pushing out students by "making their parents' lives so difficult that they withdraw." *Id.* ¶ 34, 38.

On March 13, 2017, Success Academy informed Plaintiffs that RJC had misbehaved at school. *Id.* ¶ 42. On March 15, 2017, RJC went to school with a slightly swollen lip. *Id.* ¶ 44. Ms. Eubanks, whom Plaintiffs allege was Acting Principal, asked RJC about his swollen lip. *Id.* ¶ 45. RJC said that his father whipped him at least "six times" with a belt, punched him, and stomped on his face. *Id.* Plaintiffs allege that Ms. Eubanks "coached" RJC with "suggestive and leading questioning" into fabricating this story. *Id.* They further allege that there was no physical evidence, "[o]ther than a slightly swollen lip," to corroborate it. *Id.* ¶ 47.

Ms. Eubanks reported RJC's statements and her suspicion that RJC's parents were physically abusing him to the Statewide Central Register. *Id.* ¶ 48. Agents of the New York City Administration for Children's Services ("ACS") went to the school. *Id.* ¶¶ 52-53. Defendant Adrian Gonzalez ("Agent Gonzalez")—an employee of ACS, not Success Academy—detained and questioned RJC, unbeknownst to Plaintiffs. *Id.* ¶ 53. Agent Gonzalez's questioning was allegedly leading and suggestive, and RJC continued to fabricate his story. *Id.* ¶ 55. RJC told Agent Gonzalez that his father often disciplined him at home by making him hold "a can of paint over his head for an hour and a half," which Plaintiffs allege is physically impossible. *Id.* ¶ 56.

Plaintiffs allege that Agent Gonzalez should have known that RJC's statements were not credible, that Agent Gonzalez did not follow investigative procedures, and that Agent Gonzalez

2

did not sufficiently investigate the veracity of RJC's statements. *Id.* ¶¶ 57-61. Agent Gonzalez called Plaintiffs to come to the school immediately with their younger son, DJC, but when Mr. Jean-Charles arrived, Agent Gonzalez and Ms. Eubanks prevented him from speaking with RJC, who was being kept in another room. *Id.* ¶¶ 63, 64.

Plaintiffs next allege a series of facts relating to subsequent events concerning actions by the City Defendants. *Id.* ¶¶ 65-120. Their only allegations relating to the Success Defendants' conduct during that subsequent period are that (1) RJC continued to have behavioral issues at school and was suspended five times in the spring of 2017, *id.* ¶ 101; (2) before that spring, RJC had been suspended twice over the two and two-thirds years of his time at the school, *id.*; (3) Ms. Eubanks falsely told Agent Gonzalez that Mrs. Jean-Charles did not appear for meetings about RJC, *id.* ¶ 102; (4) Ms. Eubanks was trying to make Mrs. Jean-Charles appear neglectful and encouraged the family to withdraw RJC, *id.*; (5) in June 2017, Plaintiffs withdrew RJC from Success Academy, *id.* ¶ 119; and (6) a court-appointed expert/therapist ultimately opined that RJC "was easily (and likely coached) too [*sic*] avoid punishment at school and that the abuse report by the school was a distortion." *Id.* ¶ 124.

The remaining relevant allegations (which *do not mention* the Success Defendants) are:

- Agent Gonzalez took RJC and DJC "downtown," separated them from Plaintiffs, and denied Mr. Jean-Charles counsel. *Id.* ¶¶ 64, 67-68, 77-78.

- The children were released back into Mrs. Jean-Charles's custody, but Agent Gonzalez threatened to take custody if she did not cooperate. *Id.* ¶ 81. Mrs. Jean-Charles took RJC to his pediatrician, who found no bruises except a swollen lip. *Id.* ¶¶ 84.

- Agent Gonzalez and an ACS lawyer filed an allegedly misleading emergency Neglect Petition requesting an immediate order of removal of custody. *Id.* ¶¶ 85-86.

- On March 16, 2017, the family court issued an order (lasting one day) that custody of RJC and DJC be with their aunt in Brooklyn. *Id.* ¶ 87-88. The family court modified its order the next day to give Mrs. Jean-Charles custody. *Id.* ¶ 92-93.

- The family court also issued an order of protection and, for approximately 125 days,

3

Mr. Jean-Charles was not permitted to live at home. *Id.* ¶¶ 92, 94, 99-100.

- An administrative law judge ultimately reversed Agent Gonzalez's initial finding of abuse. *Id.* ¶¶ 123-124.

## **RELEVANT ALLEGATIONS IN THE CROSS-CLAIM**

The cross-claim contains no factual allegations. *See* Dkt. No. 77. The City Defendants allege only that "[a]ny damages sustained by Plaintiffs were caused in whole or in part by the acts or omission[s] of [the Success Defendants." *Id.* at ¶ 199.

## **PROCEDURAL HISTORY**

All defendants previously moved to dismiss. On February 21, 2024, Magistrate Judge Levy entered a Report and Recommendation ("R&R"). Dkt. No. 53. The R&R recommended dismissal of, *inter alia*, all of Mr. and Mrs. Jean-Charles's claims against the Success Defendants, and the majority of RJC's and DJC's claims as well. The R&R was subsequently adopted. Plaintiffs also moved in New York Supreme Court for leave to file a late notice of claim for their otherwise barred state-law claims, but that motion was denied. *See* NYSCEF Index No. 530043/2024, [Doc. No. 24](). Thus, with the exception of their New York City Human Rights Law ("NYCHRL") claim, Plaintiffs have no surviving claims under state law—including no tort claims—because they failed to timely serve a notice of claim. *See id.*; *see also, e.g.*, R&R at 15–17 (explaining that actions founded in tort against a school or its employees require filing a timely notice of claim, which Plaintiffs failed to do).

Plaintiffs have the following remaining claims: (1) violation of family integrity by Plaintiffs RJC and DJC against Defendants Gonzales and Eubanks under federal law (Count I); (2) violation of due process by Plaintiffs RJC and DJC against Defendants Gonzales and Eubanks under federal law (Count II); unlawful seizure by Plaintiffs RJC and DJC against Defendants Gonzales and Eubanks under federal law (Count III); race discrimination by Plaintiffs RJC and

DJC against the City Defendants (Count VI); disability discrimination by Plaintiff RJC against Defendants Success Academy under the ADA and Section 504, and by Plaintiff RJC against Eubanks under the NYCHRL (Count IX). *See* Dkt. No. 76.

## **STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court should assume the truth of factual allegations that are "well-pleaded," it should not accept as true any "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678–79. Complaints containing only "conclusory, vague, or general allegations," supported by "speculation and conjecture," cannot withstand a motion to dismiss. *Gallop v. Cheney*, 642 F.3d 364, 368–69 (2d Cir. 2011) (quotations omitted).

"Motions to dismiss cross-claims are analyzed under the same standard" as other motions to dismiss. *Am. Med. Distributors v. Macdonald Tuskey*, 2018 WL 1478301, at *2 (S.D.N.Y. Mar. 23, 2018). "The court must review the factual allegations contained in the operative complaint, accepting all well-pleaded facts in the cross-claim as true and view[ing] them in the light most favorable to the cross-claimant." *Isaacs v. City of New York*, 2019 WL 1208787, at *3 (E.D.N.Y. Mar. 13, 2019) (internal quotation marks and citations omitted). However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Iqbal*, 556 U.S. at 678)).

Federal Rule of Civil Procedure 8 "sets forth the basic standard of pleading by which the sufficiency of a claim is evaluated on a motion to dismiss." *Fed. Nat. Mortg. Ass'n v. Olympia Mortg. Corp.*, 2006 WL 2802092, at *3 (E.D.N.Y. Sept. 28, 2006). Specifically, the pleading must

include a statement that "give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* (internal quotation marks and citations omitted).

**ARGUMENT**

The City Defendants cannot sustain a cross-claim against the Success Defendants because (1) their cross-claim does not allege a single fact; (2) they cannot seek contribution outside of the tort context and cannot seek indemnification because no contract or special duty between the Success Defendants and City Defendants exists, and because any liability against the City Defendants is predicated upon their own participation in the alleged wrongdoing; and (3) the City Defendants are solely liable for any damages established by Plaintiffs against the City Defendants with respect to the claims asserted against those Defendants, and cannot shift any of that liability to the Success Defendants.

**I.     The City Defendants Allege *No* Facts**

This Court can, and should, dismiss the City Defendants' cross-claim for the simple reason that the City Defendants have alleged *no* facts. The cross-claim alleges only that "[a]ny damages sustained by Plaintiffs were caused in whole or in part by the acts or omission[s] of [the Success Defendants]." Dkt. No. 77 at ¶ 199. It does not offer a single fact in support of this allegation. This is insufficient to survive a motion to dismiss.

In *Cubilete v. United States*, for example, the court granted a motion to dismiss cross-claims because the cross-claims did not "provide more than boilerplate language," and thus failed to provide "adequate notice to [defendants] of the claims asserted against them." 469 F. Supp. 3d 13, 20 (E.D.N.Y. 2020). The court emphasized that the cross-claims "[did] not contain a single independent fact," which was "insufficient … to meet the pleading requirements of Rule 8." *Id.*; *see also Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*, 156 F. Supp. 3d 348, 361 (E.D.N.Y. 2016) (same); *Energy Brands, Inc. v. Jorgensen*, 2011 WL 282354, at *7

(W.D.N.Y. Jan. 25, 2011) (dismissing cross-claims that contained only "conclusory allegations" that if movants were "found liable to plaintiff, [co-defendants] [would be] liable to [movants] under a theory of contribution or indemnification"); *Gabriel Cap., L.P. v. Natwest Fin., Inc.*, 137 F. Supp. 2d 251, 269-70 (S.D.N.Y. 2000) (similar); *cf. Isaacs*, 2019 WL 1208787, at *5 ("[W]hen reviewing a 12(b)(6) motion to dismiss cross-claims, … it is the cross-claimant's responsibility to make "specific reference to supporting facts to support [his] cross-claims"") (quoting *Am. Home Assurance Co. v. Senaduana Freight Forwarders, Inc.*, 2009 WL 10698434, at *3 (S.D. Fla. Feb. 8, 2009)); *see also Am. Home Assurance Co.*, 2009 WL 10698434, at *3 (dismissing cross-claim because, "[w]ithout specific reference to supporting facts to support their cross-claims, [defendant] is left without fair notice of what basis [cross-claim plaintiffs] seek to base their claims on"). Likewise, here: the City Defendants' cross-claim does not contain a single independent fact, does not contain more than boilerplate language, and fails to provide adequate notice to the Success Defendants of the claim(s) asserted against them. It therefore must be dismissed.

**II.     Neither Contribution Nor Indemnification is Available Here**

The City Defendants' cross-claim should also be dismissed because neither contribution nor indemnification is available (the City Defendants do not specify which they are seeking). Contribution is unavailable because Plaintiffs' claims against the City Defendants do not arise in tort. Indeed, this Court has made clear that because Plaintiffs failed to timely serve notices of claim, they have no viable tort claims. *See* NYSCEF Index No. 530043/2024, Doc. No. 24; *see also* R&R at 15–17 (explaining that actions founded in tort against a school or its employees require filing a timely notice of claim, which Plaintiffs failed to do). And indemnification is unavailable because no contract or special duty exists between the Success Defendants and City Defendants, and any liability against the City Defendants is predicated upon their own participation in the alleged wrongdoing.

7

### A. Contribution Is Unavailable Because Plaintiffs' Claims Against the City Defendants Do not Sound in Tort

First, contribution is not available outside of the tort context. *See, e.g.*, *U.S. ex rel. Ryan v. Staten Island Univ. Hosp.*, 2011 WL 1841795, at *7 (E.D.N.Y. May 13, 2011) ("[C]ontribution is available to tort defendants only.") (collecting cases). New York courts have repeatedly affirmed this principle. In *Fair Housing Justice Center, Inc. v. 203 Jay St. Associates, LLC*, for example, the Court dismissed a contribution claim because the party seeking contribution "failed to allege any form of tort liability," which is required to seek contribution. 2024 WL 3934518, at *2, *6, *8-*9 (E.D.N.Y. Aug. 26, 2024); *see also, e.g.*, *Landtek Grp., Inc. v. N. Am. Specialty Flooring, Inc.*, 2016 WL 11264722, at *33 (E.D.N.Y. Aug. 12, 2016), *report and recommendation adopted*, 2016 WL 8671839 (E.D.N.Y. Sept. 16, 2016) (similar); *Goodman v. Port Auth. of New York & New Jersey*, 850 F. Supp. 2d 363, 391 (S.D.N.Y. 2012) ("This rule is narrowly construed to permit contribution only for actions sounding in tort."); *In re Lowbet Realty Corp.*, 43 Misc. 3d 587, 591 (Sup. Ct. N.Y. Cnty. 2014) (explaining that, because "the right to contribution had its genesis in tort law, some form of tort liability is a prerequisite for obtaining contribution"). None of the claims at issue involve tort liability. The City Defendants therefore cannot seek contribution through a cross-claim.

### B. Indemnification Is Unavailable

Second, the City Defendants cannot seek indemnification because (1) no contract or special relationship exists between them and the Success Defendants giving rise to a right of indemnification, and (2) regardless, any liability imposed upon the City Defendants would necessarily arise from their own participation in the alleged wrongdoing (as distinct from vicarious liability for the Success Defendants' alleged wrongdoing), thus negating any right of indemnification that otherwise might exist.

Indemnification arises only out of a contract, express or implied, and neither exists here. *See Ainette v. Mkt. Basket Inc.*, 2021 WL 1022590, at *9 (S.D.N.Y. Mar. 16, 2021) ("Indemnity, on the other hand, arises out of a contract which may be express or implied in law to prevent a result which is regarded as unjust or unsatisfactory …. To state a claim for implied indemnification, a party must allege a special relationship with the potential indemnitee that gives rise to an implied duty to indemnify."); *Amguard Ins. Co. v. Getty Realty Corp.*, 147 F. Supp. 3d 212, 220 (S.D.N.Y. 2015) (similar); *Haraden Motorcar Corp. v. Bonarrigo*, 2021 WL 4906989, at *5 (N.D.N.Y. Oct. 21, 2021) (similar). No contract or special relationship exists between the Success Defendants and City Defendants, and the City Defendants have not even attempted to make such an allegation (nor could they).

In addition, indemnification is barred entirely where the party seeking indemnification has itself "participated to some degree in the wrongdoing." *U.S. Bank, Nat. Ass'n v. Commonwealth Land Title Ins. Co.*, 2015 WL 1291151, at *2 (S.D.N.Y. Mar. 23, 2015) (quoting *17 Vista Fee Assoc. v. Tchrs. Ins. and Annuity Ass'n of Am.*, 259 A.D.2d 75, 80 (1st Dep't 1999); *see also Monaghan v. SZS 33 Assocs., L.P.*, 73 F.3d 1276, 1285 (2d Cir. 1996) ("New York case law supports a proposition ... that common-law indemnity is barred altogether where the party seeking indemnification was itself at fault ...."). Here, the TAC makes clear that the City Defendants not only participated in, but were also the actual drivers of, the alleged wrongdoing. *See generally TAC*; *see also infra* Section III. The City Defendants therefore cannot seek indemnification through a cross-claim either.

## III. Any Liability Imposed By Plaintiffs Upon the City Defendants Arises from the City Defendants' Own Conduct.

Finally, the City Defendants' cross-claim should be dismissed because the Plaintiffs' claims that are alleged against the City Defendants arise out of the actions of the *City Defendants*—not those of the Success Defendants.

***First***, when Defendant Eubanks reported potential child abuse to the City, she did so because she was *required* to do so by law. Under New York Social Services Law, school teachers, administrators, and personnel are mandated reporters. *See* N.Y. Soc. Serv. Law § 413 (McKinney). This means that they are "required to report or cause a report to be made in accordance with [the law] when they have reasonable cause to suspect that a child coming before them in their professional or official capacity is an abused or maltreated child." *Id.*; *see also J.C. v. Mark Country Day Sch.*, 2007 WL 201163, at *5 (E.D.N.Y. Jan. 23, 2007) ("The Social Services Law does not provide that the reporter be trained or experienced in identifying suspected child abuse. The Social Services Law merely designates certain persons and/or officials who must report suspected child abuse or maltreatment."). Indeed, the "state's interest in encouraging teachers to protect their students … is so powerful that school officials are immune from civil and criminal liability when they report suspected abuse in good faith …." *Stollman v. Williams*, 2023 WL 6294156, at *10 (S.D.N.Y. Sept. 27, 2023) (citing N.Y. Soc. Serv. Law § 413(1)(a), § 419).

***Second***, once Defendant Eubanks reported the potential child abuse—which she was mandated to do—ACS was required to take over the case and make its *own* determination whether abuse had, in fact, taken place. In particular, "[u]pon receipt of a report, the local child protective service agency—here, … ACS[]—must initiate an investigation within twenty-four hours. *L.B. v. City of New York*, 2025 WL 788662, at *1 (E.D.N.Y. Mar. 12, 2025) (citing N.Y. Soc. Serv. Law § 424(6)(a)). "As part of this investigation, ACS must attempt to conduct a home visit and conduct

10

face-to-face interviews with the subjects of the report." *Id.* (citing N.Y. Comp. Codes R. & Regs. tit. 18, § 432.2(b)(3)(ii)(a), (iii)(a)). Other parts of this investigation—which are managed entirely by ACS and its employees—include the following:

- "If at any point during the investigation the subject of a report or a family member denies an ACS investigator access to any child residing at the home or if a child within the home cannot be located, the investigator must determine whether to seek family court intervention or take other emergency measures within twenty-four hours of the denial of access." *Id.* (citing N.Y. Comp. Codes R. & Regs. tit. 18, § 432.2(b)(3)(ii)(a)).

- "Within sixty days of the report, ACS must determine whether the report is 'indicated'— meaning that the investigation determined that 'some credible evidence of the alleged abuse or maltreatment exists,' for investigations commenced on or before December 31, 2021…—or 'unfounded,' meaning that the investigation did not uncover such evidence." *Id.* (citing N.Y. Soc. Serv. Law §§ 412(6)–(7), 424(7)).

The City Defendants thus have no credible basis upon which to hold the *Success Defendants* liable for the claims against the *City Defendants*. The allegations against the City Defendants relate to claims regarding the City Defendants' conduct, *see, e.g.*, TAC ¶¶ 65-120, which took place *after* Eubanks reported the potential abuse and the City Defendants initiated their own investigation.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the City Defendants' cross-claim.

Dated: New York, NY
April 21, 2025

Respectfully submitted,

**WALDEN MACHT HARAN & WILLIAMS LLP**

By: /s/ *Georgia Winston*

Georgia K. Winston
Hannah Belitz
250 Vesey Street, 27th Floor
New York, NY 10281
Tel: (212) 335-2030
gwinston@wmhwlaw.com

*Attorneys for Attorneys for Success Academy Charter Schools, Inc., Success Academy Charter Schools – NYC, and Vailarie Eubanks*